# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |
|---|---|
| Kristen Lesorgen, individually and on behalf of all others similarly situated, | 3:22-cv-50375 |
| Plaintiff, |  |
| - against - | Class Action Complaint |
| Mondelēz Global LLC, |  |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Mondelēz Global LLC ("Defendant") manufactures, labels, markets, and sells chewing gum under the Trident brand described as "Original Flavor" with a picture of a mint leaf ("Product").



2.      According to research by Mintel, consumers have a hierarchy when it comes to their preferences for the source of a food's taste.

3.     The most preferred option is when a food's taste comes from its characterizing ingredients, such mint oil or mint extract, where the labeling contains the word mint or pictures of mint leaves.

4.     The second and third options are natural flavors from mint or other natural sources ("natural flavor") or flavoring from non-natural sources ("artificial flavors"). 21 C.F.R. § 101.22.

5.     The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors []"as bleak, given consumer opposition to these potentially harmful synthetic ingredients.[1]

6.     Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public seeks to avoid artificial flavors.

7.     Federal and identical state labeling regulations require that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," the source of the flavor must be disclosed to consumers.

8.     This means the front label must tell consumers the source of the mint or peppermint taste on the front label, i.e., from mint or peppermint ingredients, natural flavors from peppermint or other natural sources ("natural flavor"), or flavoring from non-natural sources ("artificial flavors"). 21 C.F.R. § 101.22.

9.     According to one commentator, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[2]

10.    Though the Product's front label states, "ORIGINAL FLAVOR," this is below a picture of a peppermint leaf colored blue.

---

[1] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[2] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.





11.    First, the venation pattern on the pictured leaf closely resembles what appears naturally on a peppermint leaf.

12.    Second, mint is the most popular flavor of gum because it is associated with freshness.

13.    Third, though Defendant does not explicitly disclose the flavor beyond the word "Original" and the mint leaf, it is described in materials provided to third parties by Defendant as a combination of peppermint and cinnamon flavor.

14.    Consumers seeing a pack of gum described as "Refreshing[ly]" and a leaf will realize the gum has a mint flavor and not, for example, banana flavored.

15.    Peppermint is one of the most popular mint flavors.

16.    By representing the Product as "mint" or "peppermint" without any qualifying terms, consumers and Plaintiff expected its taste was from mint or peppermint ingredients.

17.    However, the ingredient list in small print on the back does not identify any mint or

3

peppermint ingredients, and gets its mint or peppermint taste from "Natural and Artificial Flavor."

**INGREDIENTS:** SORBITOL, GUM BASE, XYLITOL, GLYCERIN, NATURAL AND ARTIFICIAL FLAVOR; LESS THAN 2% OF: ACESULFAME POTASSIUM, ASPARTAME, BHT (TO MAINTAIN FRESHNESS), MANNITOL, SOY LECITHIN, SUCRALOSE.

18.    According to flavor expert Bob Holmes, because the ingredient list fails to identify any form of mint or peppermint ingredient, i.e., peppermint oil or peppermint extract, it means that any mint or peppermint, if present, is at trace or de minimis levels as part of the natural flavor ingredient, and cannot provide "all the flavor depth" of mint or peppermint.

19.    Natural and artificial flavor are less expensive and more concentrated than real mint and peppermint, so less of it needs to be used.

20.    The Product's added natural and artificial flavor simulates, resembles and/or reinforces its characterizing flavor of mint or peppermint, and is required to be disclosed prominently on the front label to consumers, such as "Natural and Artificially Flavored Mint" or "Natural and Artificially Flavored Peppermint."

21.    The Product contains other false and misleading representations and omissions.

22.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

23.    As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately no less than $2.99 for 14 sticks, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

4

Jurisdiction and Venue

24.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

25.     The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

26.     Plaintiff is a citizen of Illinois.

27.     Defendant's sole member is citizen of Delaware and New Jersey.

28.     The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant's member is a citizen.

29.     The members of the class Plaintiff seeks to represent are more than 100, because the

Product has been sold with the representations described in thousands of locations, including

grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online

across the States covered by Plaintiff's proposed classes.

30.     Venue is in this District with assignment to the Western Division because Plaintiff

resides in DeKalb County and a substantial part of the events and omissions giving rise to these

claims occurred in here, including Plaintiff's purchase of the Product and awareness the labeling

was false and misleading.

Parties

31.     Plaintiff Kristen Lesorgen is a citizen of Sycamore, DeKalb County, Illinois.

32.     Defendant Mondelēz Global LLC, is a Delaware limited liability company with a

principal place of business in East Hanover, New Jersey, Morris County.

33.     Defendant's managing member is Mondelēz International, Inc., a Virginia

corporation with a principal place of business in New Jersey.

34. Defendant owns and controls the Trident brand of gum.

35. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Meijer, 541 Puri Pkwy Sycamore IL 60178-9029, between August and October 2022, among other times.

36. Plaintiff bought the Product because she saw and relied on the picture of the leaf which looked like a mint leaf, and in the context of a pack of gum, this seemed reasonable to her.

37. Plaintiff expected the Product's flavor was from mint or peppermint ingredients and not from artificial flavoring.

38. Plaintiff was unaware the Product only contained natural and artificial flavoring which simulated the flavoring of mint and peppermint ingredients.

39. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

40. Plaintiff bought the Product at or exceeding the above-referenced price.

41. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

42. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes.

43. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

44. Plaintiff is unable to rely on the labeling of not only this Product, but other similar

mint flavored products because she is unsure of whether their representations are truthful.

Class Allegations

45.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, South Carolina, Kentucky, Utah, Idaho, Alaska, Virginia, Virginia, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

46.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48.     Plaintiff is an adequate representative because her interests do not conflict with other members.

49.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52.     Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

53.    Plaintiff incorporates by reference all preceding paragraphs.

54.    Plaintiff relied on the representations and omissions to believe the Product contained mint or peppermint ingredients and not artificial flavoring.

55.    Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

56.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

57.    The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

58.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained mint or peppermint ingredients and not artificial flavoring.

59.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

60.    Defendant knew the product attributes that potential customers like Plaintiff were

seeking, such as foods which contained mint or peppermint ingredients and not artificial flavoring, and developed its marketing and labeling to directly meet those needs and desires.

61.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained mint or peppermint ingredients and not artificial flavoring.

62.    Defendant described the Product so Plaintiff believed it contained mint or peppermint ingredients and not artificial flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

63.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

64.    This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Trident brand of gum.

65.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

66.    Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

67.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

68.    The Product did not conform to its affirmations of fact and promises.
The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained mint or peppermint ingredients and not artificial flavoring.

69.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained mint or peppermint ingredients and not artificial flavoring, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

70.     Defendant had a duty to truthfully represent the Product, which it breached.

71.     This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality gum.

72.     The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

73.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

74.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

75.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

76.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained mint or peppermint ingredients and not artificial flavoring.

77.     Defendant was aware, based on internal studies, of consumer preferences for foods which got their flavor from their characterizing ingredients and avoidance of artificial flavoring.

<u>Unjust Enrichment</u>

78.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   October 28, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com