UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Kristen Lesorgen, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Mondelēz Global LLC,<br><br>Defendant | 3:22-cv-50375<br><br>Hon. Iain D. Johnston<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Mondelēz Global LLC ("Defendant") manufactures and sells chewing gum having what it describes as "Original Flavor" above a peppermint leaf ("Product").



### I. CONSUMER FLAVOR PREFERENCES

2. Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory

expectations" about attributes such as its taste and the source of that taste.[1]

3. Relevant federal and identical state regulations are based on this principle, and require that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," this is considered its "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

4. This rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[2]

5. According to research by Mintel, consumers prefer foods which get their taste from a characterizing ingredient, like mint jelly with real mint ingredients.

6. Less preferred are when foods get their mint taste from essences and other flavor compounds taken from mint and non-mint natural sources ("natural flavor") or synthetic ingredients ("artificial flavors"). 21 C.F.R. § 101.22.

7. Of these three options, artificial flavors are avoided by between sixty and eighty percent of the public, according to surveys from Nielsen, New Hope Network, and Label Insight.[3]

## II. MINT IS A CHARACTERIZING FLAVOR IN PRODUCT

8. Consumers viewing the picture of a peppermint leaf on Defendant's "Original Flavor" gum will expect it has a characterizing flavor of mint.

---

[1] Lancelot Miltgen, Caroline, Gaëlle Pantin Sohier, and Bianca Grohmann. "Communicating sensory attributes and innovation through food product labeling." Journal of food products marketing 22.2 (2016): 219-239; Blackmore, Helena, Claire Hidrio, and Martin R. Yeomans. "A taste of things to come: The effect of extrinsic and intrinsic cues on perceived properties of beer mediated by expectations." Food Quality and Preference 94 (2021): 104326; Okamoto, Masako, and Ippeita Dan. "Extrinsic information influences taste and flavor perception: A review from psychological and neuroimaging perspectives." Seminars in cell & developmental biology. Vol. 24. No. 3. Academic Press, 2013.
[2] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

2

9. Though the front label does not contain the words "mint" or "peppermint," mint is its characterizing flavor.

10. The labeling is misleading because despite the picture of a peppermint leaf, the mint taste is from artificial flavoring, omitted from the front label.

A. Picture of Leaf Identical to Peppermint Variety

11. Defendant sells gum with flavors of "Perfect Peppermint," "Original []," "Wintergreen" and "Spearmint."

12. The peppermint and original contain vignettes of a peppermint leaf, while the wintergreen and spearmint display vignettes of those specific mint leaves.



13. Though the peppermint, wintergreen and spearmint disclose the source of their taste

through the statements of "Natural and Artificial Flavor" and "Artificial Flavor," the "Original" lacks any similar statement.



14. The omission of any statement about the source of the Original's taste is notable given that the leaves on the peppermint and Original are the identical peppermint leaves.



4

B. <u>Consumers Expect Botanical Leaf on Gum to be Reference to Mint</u>

15. Even though the labeling of the "Original" does not contain the words "mint" or "peppermint," the picture of the leaf and overall context of chewing gum products and flavors tells purchasers its flavor is mint.

16. First, the leaf on the label displays small bubbles, presumably due to condensation, a reference to the "cooling" sensation consumers associate with mint products.



17. Second, according to Gerrit J. Verburg, distributor of some of the oldest chewing gum brands and confectionery scholars, "the vast majority of chewing gum in America is flavored after some form of minty freshness – spearmint, peppermint, wintergreen, etc."[4]

18. This was confirmed by numerous surveys, including those by Nielsen and Statista that indicated "[M]int is the flavor that displays the largest market share [for gum], accounting for approximately 50%, followed by fruit-flavored gum with 19%."[5]

19. A survey of the top ten gum flavors of gum listed mint, spearmint and peppermint as the top three, wintergreen as sixth and cinnamon eighth.[6]

20. Flavor manufacturer FONA International noted that "[W]hile cinnamon and other

---

[4] Klinjapo, Roungdao, and Wunwisa Krasaekoopt. "Microencapsulation of color and flavor in confectionery products." *Natural and Artificial Flavoring Agents and Food Dyes*. Academic Press, 2018. 457-494.
[5] Elizabeth Green, Mint Flavors, Food Ingredients First, , Mar. 21, 2019; Jan Conway, Gum flavor preference in the United States in 2020, by generation, Jan Conway, Jan 2, 2023.
[6] Roberto A. Ferdman, Which gum Americans are chewing on these days, Quartz, Mar. 22, 2014.

5

spices [such as wintergreen] are not technically mint, they offer a similar freshening value proposition to consumers and are therefore considered among the mint category."[7]

21. Though the flavoring sensations of mint (cooling) and cinnamon (warm) differ, these botanical ingredients appeal to the "76% of consumers are seeking an improvement in breath freshening," whether from toothpaste or chewing gum, according to a recent Mintel survey.

22. FONA observed that "[I]n North America, 'unspecified mint,'" "usually [] a peppermint dominant mint blend (often a sweet mint or a peppermint with some herbal notes)," "is the leading flavor in breath freshening products" such as gum.[8]

23. This was confirmed by Juan Mejia, Global Mint Business Development Director at Firmenich, the largest flavor manufacturer in the world, who stated that the most common gum flavors "[I]n the US [are] [] mint blends, [] [then] [] peppermint … followed by spearmint, [with] [W]intergreen [] also popular."[9]

24. Agricultural researchers in America's "Mint Belt" in the Pacific Northwest "[D]ivided [mint gums] into [the] three sub[-]categories [of] peppermint (19.6%), spearmint (13.8%), and other, not recognizable or artificial types of mint (17.9%)."[10]

25. Defendant's "Original" flavor falls squarely within this third category, "not recognizable or artificial types of mint," which "includes types of mint agglomerate product flavors, such as 'Arctic Chill' and 'Cool Frost' in which it was not possible to determine clearly which type of mint was used."[11]

---

[7] FONA International, Flavor Trends: Mint, May 18, 2015.
[8] FONA International, Flavor Trends: Mint, May 18, 2015.
[9] Green, *supra*.
[10] Toro-González, Daniel, et al. "Quality Differentiation with Flavors: Demand Estimation of Unobserved Attributes." Journal of Agricultural & Food Industrial Organization, 11.1 (2013): 101-111.
[11] Toro-González, at 4 n. 8.

6

### III. LABELING MISLEADING BECAUSE PRODUCT LACKS REAL MINT INGREDIENTS

26. Though the Product's characterizing flavor is mint, its labeling is misleading because it lacks any mint ingredients.

27. This is shown through the absence of any mint or peppermint ingredients on the back label ingredient list, which discloses the mint taste is from "Natural and Artificial Flavor."



**INGREDIENTS:** SORBITOL, GUM BASE, XYLITOL, GLYCERIN, NATURAL AND ARTIFICIAL FLAVOR; LESS THAN 2% OF: ACESULFAME POTASSIUM, ASPARTAME, BHT (TO MAINTAIN FRESHNESS), MANNITOL, SOY LECITHIN, SUCRALOSE.

28. According to flavor expert Robert Holmes, because the ingredient list fails to identify any form of mint or peppermint ingredient, i.e., peppermint oil or peppermint extract, any mint would be de minimis or negligible as part of the "natural flavor."

29. Neither natural or artificial mint flavor can provide "all the flavor depth" and cooling sensations of mint or peppermint.

30. Natural and artificial flavor are less expensive and more concentrated than real mint and peppermint, so less of it needs to be used.

31. The Product's added artificial flavor simulates, resembles and/or reinforces its characterizing mint or peppermint flavor, and is required to be disclosed prominently on the front label to consumers, such as "Artificially Flavored Mint" or "Artificially Flavored Peppermint." 21 C.F.R. § 101.22(i)(2).

### IV. COMPETITOR PRODUCTS WITHOUT FLAVOR DISCLOSURE CONTAIN MINT INGREDIENTS

32. Mint flavored gum with mint ingredients exists in the marketplace and is not

technologically or otherwise unfeasible to produce, sell and consume, shown by the four gums from The Humble Co., Glee Gum, Simply Gum and Project 7.






33. These products are labeled identically to the Trident Original Flavor with a peppermint leaf, in that none of them disclose the source of their mint flavor on their front labels.

34. However, the Trident Original contains undisclosed artificial mint flavoring and fails to list any mint ingredients on the ingredient list, which means the amount of any mint is de minmis or negligible.

35. The result is that consumers like Plaintiff will purchase Trident Original, believing it is equal in quality to the above-identified brands, when it is of lower quality and contains lower-

8

valued ingredients.

## V. DEFENDANT ACKNOWLEDGES PRODUCT HAS A CHARACTERIZING FLAVOR OF MINT

36. Though the label of Trident Original does not state "mint" or "peppermint," Defendant's ad copy distributed to sellers states, "Trident Original combines the flavors of peppermint and cinnamon gum for a unique, refreshing flavor."

37. This is shown through a Google search of that quote, which retrieves almost 1,300 results, almost all sellers of Trident Original, shown by a small sample of the results.[12]



---

[12] "trident original combines the flavors of peppermint and cinnamon gum."

9

38. The requirement that a food disclose the source of its characterizing flavor applies to foods which contain two characterizing flavors such as the peppermint and cinnamon Defendant identifies in its off label description, such that the front label should state "artificially flavored peppermint and cinnamon." 21 C.F.R. § 101.22(i)(3)(ii).

39. Nor is Defendant's "Original Flavor" a brand or well-recognized proprietary brand names, such as "a 'cola' beverage or ginger ale" which would not … "constitute a flavor representation."[13]

40. Interestingly, Defendant's official social media pages on Facebook and Twitter contain a picture of Trident Original with a prominent statement it is "Artificially Flavored."



---

[13] Food Labeling; Spices, Flavorings, Colorings, and Chemical Preservatives, 38 Fed. Reg. 33284, 33285 (Dec. 3, 1973).



41. These social media pictures were not inadvertent or anomalies, as other pictures of

11

Trident Original with an "Artificially Flavored" statement exist and are authentic.[14]



42. Decades ago, long before Defendant owned Trident and consumers could assert their rights through private legal actions, the Trident Original labeling was more truthful than it is today, disclosing "Natural and Artificial Flavors" on the front label.



---

[14] It is ironic, or indefensible, that Defendant seeks sanctions for Plaintiff's allegations that the failure to disclose the required statement of artificial flavoring on the front label was misleading to her and consumers, while its official social media pages appears to acknowledge the accuracy and legitimacy of the Complaint's allegations.

12

Jurisdiction and Venue

43. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

45. Plaintiff is a citizen of Illinois.

46. Defendant's sole member is citizen of Delaware and New Jersey.

47. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant's member is a citizen.

48. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described in thousands of locations, including grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online across the States covered by Plaintiff's proposed classes.

49. Venue is in this District with assignment to the Western Division because Plaintiff resides in DeKalb County and a substantial part of the events and omissions giving rise to these claims occurred in here, including Plaintiff's purchase of the Product and awareness the labeling was false and misleading.

Parties

50. Plaintiff Kristen Lesorgen is a citizen of Sycamore, DeKalb County, Illinois.

51. Defendant Mondelēz Global LLC, is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Morris County.

52. Defendant's managing member is Mondelēz International, Inc., a Virginia corporation with a principal place of business in New Jersey.

13

53. Defendant owns and controls the Trident brand of gum.

54. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately no less than $2.99 for 14 sticks, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

55. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Meijer, 541 Puri Pkwy Sycamore IL 60178-9029, between August and October 2022, among other times.

56. Plaintiff bought the Product because she saw and relied on the picture of the leaf which looked like a mint leaf, and in the context of a pack of gum, this seemed reasonable to her because she knew most gums were mint flavored.

57. Plaintiff expected the Product's flavor was from mint or peppermint ingredients and not from artificial flavoring.

58. Plaintiff was unaware the Product only contained natural and artificial flavoring which simulated the flavoring of mint and peppermint ingredients.

59. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

60. Plaintiff bought the Product at or exceeding the above-referenced price.

61. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

62. Plaintiff chose between Defendant's Product and products represented similarly, but

14

which did not misrepresent their attributes.

63. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

64. Plaintiff is unable to rely on the labeling of not only this Product, but other similar mint flavored products because she is unsure of whether their representations are truthful.

## Class Allegations

65. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, South Carolina, Kentucky, Utah, Idaho, Alaska, Virginia, Virginia, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

66. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

68. Plaintiff is an adequate representative because her interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff relied on the representations and omissions to believe the Product contained mint or peppermint ingredients and not artificial flavoring to provide the mint or peppermint taste.

75. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

76. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

77. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

78. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained mint or peppermint ingredients and not artificial flavoring.

16

79. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

80. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which contained mint or peppermint ingredients and not artificial flavoring, and developed its marketing and labeling to directly meet those needs and desires.

81. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained mint or peppermint ingredients and not artificial flavoring.

82. Defendant described the Product so Plaintiff believed it contained mint or peppermint ingredients and not artificial flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

83. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

84. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Trident brand of gum.

85. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

86. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

87. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

88. The Product did not conform to its affirmations of fact and promises.

The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained mint or peppermint ingredients and not artificial flavoring.

89. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained mint or peppermint ingredients and not artificial flavoring, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

## Negligent Misrepresentation

90. Defendant had a duty to truthfully represent the Product, which it breached.

91. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality gum.

92. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

93. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

94. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

95. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

96.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained mint or peppermint ingredients and not artificial flavoring.

97.     Defendant was aware, based on internal studies, of consumer preferences for foods which got their flavor from their characterizing ingredients and avoidance of artificial flavoring.

### Unjust Enrichment

98.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   March 8, 2023

                                                Respectfully submitted,

                                                /s/Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com